**FILED**
**CLERK**

2/10/2025 8:38 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| The United States of America, | . Docket #CR-20-251-2 (JMA)(SIL) |
| Plaintiff, | . |
| | . United States Courthouse |
| vs. | . Central Islip, New York |
| | . February 6, 2025 |
| Alfaro, et al., | . 12:52 p.m. |
| Defendants. | . |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA OF DEFENDANT**
**JOSE MOISES-BLANCO**
**BEFORE THE HONORABLE STEVEN I. LOCKE**
**UNITED STATES MAGISTRATE JUDGE**

**APPEARANCES:**

| | |
|---|---|
| For The Plaintiff: | Megan E. Farrell, Esq. |
| | Assistant U.S. Attorney |
| | 271 Cadman Plaza East |
| | Brooklyn, NY 11201 |
| | |
| | Justina L. Geraci, Esq. |
| | Assistant U.S. Attorney |
| | 610 Federal Plaza |
| | Central Islip, NY 11722 |
| | |
| For The Defendant: | Justine A. Harris, Esq. |
| | Sher Tremonte, LLP |
| | 90 Broad Street-23rd Fl. |
| | New York, NY 10004 |
| | |
| | Katie E. Renzler, Esq. |
| | Sher Tremonte, LLP |
| | 90 Broad Street-23rd Fl. |
| | New York, NY 10004 |
| | |
| Audio Operator: | |

Transcribing Firm:          Writer's Cramp, Inc.
1027 Betty Lane
Ewing, NJ 08628
609-588-8043

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

Index

|                              | Direct | Cross | Redirect | Recross | Further Redirect |
|------------------------------|--------|-------|----------|---------|------------------|
| Witnesses For The Plaintiff: |        |       |          |         |                  |
| Witnesses For The Defendant: |        |       |          |         |                  |

| EXHIBITS: | Marked | Received |
|-----------|--------|----------|

THE COURT: Finding          27

THE CLERK: All rise. Calling case 20-CR-251, <u>The United States of America vs. Jose Blanco</u>. Counsel, please state your appearance for the record.

MS. FARRELL: Megan Farrell and Justina Geraci for the Government. Good afternoon, Your Honor.

THE COURT: Good afternoon.

MS. HARRIS: Good afternoon, Your Honor. Justine Harris and Katie Renzler for Jose Moises-Blanco.

THE COURT: Good afternoon. Please be seated. Ms. Harris, your client is with you at counsel table?

MS. HARRIS: Yes, he is, on my right, Your Honor.

THE COURT: Let's swear the Interpreter, please.

(MIGUEL ALMONTE sworn to interpret Spanish into English)

THE CLERK: Please state your name for the record.

MR. ALMONTE: Miguel, M-I-G-U-E-L, Almonte, A-L-M-O-N-T-E, Your Honor.

THE COURT: Good afternoon. Thank you for joining us. Before we get started, Mr. Blanco, you should understand that you have the right to have your plea heard by a United States district judge, in this case, Judge Azrack. I am not a United States district judge. I'm a United States magistrate judge. Therefore, in order for me to preside over these proceedings, I need your consent. Do you consent to me presiding over these proceedings?

MR. BLANCO: Yes, Your Honor.

THE COURT: Okay. You can pull the microphone towards you. Okay. I'm holding a document. It's one page. It's entitled "Order of Referral" explaining the referral to me from Judge Azrack. It appears to bear your signature on the bottom, is that your signature, sir?

MR. BLANCO: Yes, Your Honor.

THE COURT: I'm going to (inaudible). The way this is going to work is that I'm going to hear your plea, and then I'm going to make a recommendation to Judge Azrack based on our conversation. The reason I'm going to ask you a series of questions is so that I can assure myself that your plea is indeed a valid one. Therefore, if you don't understand my question or you don't hear my question, please just say so, and I'll attempt to reword it or repeat it so that you understand, okay?

MR. BLANCO: Would you please stand?

MS. FARRELL: Your -- I apologize, Your Honor. If the Interpreter could just pull the microphone in front of him so, that way, his answers are recorded? I just want to make sure. Thank you.

JOSE MOISES-BLANCO, DEFENDANT, SWORN

THE COURT: Please be seated. Sir, do you understand that having been sworn, your answers to my questions will be subject to the penalties of perjury or making a false statement if you do not answer truthfully?

MR. BLANCO: Yes, Your Honor.

                    DIRECT EXAMINATION

BY THE COURT:

Q. What is your full name, sir?

A. Jose Moises-Blanco.

Q. And how old are you?

A. Thirty-five years old.

Q. Are you a citizen of the United States?

A. No.

Q. Have you discussed with your attorney whether your guilty plea will impact your ability to remain in this country?

A. Yes, Your Honor.

Q. Are you satisfied that you understand the impact that a guilty plea in this case may have on your ability to remain in this country after your sentence is served?

A. Yes, Your Honor.

Q. How far did you go in school?

A. Just first year.

Q. First year of grade school or high school or something else?

A. First year grade school.

Q. Okay. Are you presently or have you recently been under the care of a physician or psychiatrist?

A. No, Your Honor.

Q. In the past 24 hours, have you taken any narcotic drugs,

medicine, or pills, or drank any alcoholic beverages?

A.  No, Your Honor.

Q.  Have you ever been hospitalized or treated for a narcotic addiction?

A.  No, Your Honor.

Q.  Is your mind clear today?

A.  Yes, Your Honor.

Q.  Do you understand the nature of today's proceedings?

A.  Yes, Your Honor.

THE COURT:  Ms. Harris, have you discussed this matter with your client?

MS. HARRIS:  I have, Your Honor.

THE COURT:  And did you have the aid of an interpreter when doing so?

MS. HARRIS:  I did, Your Honor.

THE COURT:  Did you -- do you believe your client understands the rights he'll be waiving with a guilty plea?

MS. HARRIS:  I do, Your Honor.

THE COURT:  Do you believe he is capable of understanding the nature of today's proceedings?

MS. HARRIS:  Yes, Your Honor.

THE COURT:  Do you have doubts about his competence to plead at this time?

MS. HARRIS:  No doubts, Your Honor.

BY THE COURT:

Q. Mr. Blanco, you have the right to plead "not guilty," do you understand?

A. Yes, Your Honor.

Q. If you plead "not guilty," under the Constitution and laws of the United States, you are entitled to a speedy and public trial by jury with the assistance of counsel on all charges, do you understand?

A. Yes, Your Honor.

Q. At the trial, you would be presumed to be innocent, and the Government would have to overcome that presumption and prove you guilty by competent evidence and beyond a reasonable doubt, and you would not have to prove that you're innocent. And if the Government failed, the jury would have the duty to find you not guilty, do you understand?

A. Yes, Your Honor.

Q. In the course of the trial, witnesses for the Government would have to come to Court and testify in your presence and where counsel would have the right to cross examine the witnesses for the Government, to object to evidence offered by the Government, and to offer evidence on your behalf, do you understand?

A. Yes, Your Honor.

Q. And if the witnesses -- if there were witnesses that were reluctant to come to trial, your attorney would have the right to subpoena those witnesses and make them testify on your

behalf, do you understand?

A. Yes, Your Honor.

Q. At the trial, while you would have the right to testify if you chose to do so, you could not be required to testify. Under the Constitution of the United States, you cannot be compelled to incriminate yourself. If you decide not to testify, the Court would instruct the jury that they could not hold that against you, do you understand?

A. Yes, Your Honor.

Q. If you plead "guilty" and if I recommend the sentence of the plea and that plea is accepted, you will be giving up your Constitutional rights to a trial and the other rights we've just discussed. There will be no further trial of any kind and no right to appeal or collaterally attack at any time the question of whether you are guilty or not, although you may be able to challenge the sentence if you're sentenced to a period of incarceration greater than 420 months, you're sentenced to supervised release greater than to that, greater than the statutory maximum, or if a condition of supervised release is imposed that you didn't have notice of and an opportunity to object, do you understand?

A. Yes, Your Honor.

Q. If you plead "guilty," I'll have to ask you questions about what you did in order to satisfy myself that you are guilty of the charges to which you seek to plead guilty, and

you'll have to answer my questions and acknowledge your guilt. Thus, you'll be giving up your right not to incriminate yourself, do you understand?

A. Yes, Your Honor.

Q. Are you willing to give up your right to a trial and the other rights we've just discussed?

A. Yes, Your Honor.

Q. I'm holding a document before me entitled "Plea Agreement." It is 10 pages. It appears to bear your signature on the last page, is that your signature, sir?

A. Yes, Your Honor.

Q. Did you speak with your attorney about the terms of the Plea Agreement before you signed it?

A. Yes, Your Honor.

Q. Did you have the aid of an interpreter during that conversation?

A. Yes, Your Honor.

Q. And was your attorney able to answer all of your questions and explain the terms of the Agreement to your satisfaction with the aid of the interpreter?

A. Yes, Your Honor.

        THE COURT: Ms. Harris, the Plea Agreement which was signed by -- appears to be signed by all the attorneys and your client has a blank that says "translated by," but it's still blank. Was there an interpreter present during your

conversations with your client prior to signing this?

MS. HARRIS: There was an interpreter present, Your Honor, and that interpreter also provided a written Spanish translation of the Plea Agreement to Mr. Blanco. That interpreter's name is Mr. J.C. Venant , V-E-N-A-N-T.

THE COURT: Okay. And for the record, that's not the Interpreter who is assisting us today. I'm going -- is -- Ms. Farrell, are you taking the weight room over today?

MS. FARRELL: I am, Your Honor.

THE COURT: Would you explain for the record or please provide a summary of the Agreement for the record? And go slowly for the Interpreter, please.

MS. FARRELL: Of course, Your Honor. Your Honor, the Agreement is that the Defendant will plead guilty to Count 1 of the indictment and in connection with that plea, which is a violation of 1962(c) and 1963 --

THE COURT: And it's the superceding indictment, is that correct?

MS. FARRELL: Correct, Your Honor. It is the superceding indictment. The Defendant will admit his participation in the predicate racketeering acts of the murder of Josue Amaya-Leonor on September 4th, 2016, as well as a conspiracy to distribute and possess with intent to distribute marijuana from January 2016 through July of 2020, which is Racketeering Act 10.

In connection with that plea, the Defendant agrees to allocute that he was a member of the MS-13, also known as the Mara Salvatrucha, that that organization is an enterprise as defined by law, that through its leaders, members, and associates, the MS-13 engaged in racketeering activity as defined by law, and that the Defendant participated in the affairs of the MS-13 through a pattern of racketeering activity including acts that I've already mentioned.

MR. ALMONTE: Sorry. Participate -- by the Interpreter. Participated by way of --

MS. FARRELL: In a pattern of racketeering activity, including in the acts that I've already mentioned. Pursuant to this Agreement and under Federal Rule {sic} of Criminal Procedure 11(c)(1)(c), the Government and the Defendant agree that there will be a specific sentencing range of 360 to 420 months imprisonment with a maximum term of supervised release of five years. Under this Agreement, if Judge Azrack does not agree to accept the terms that the parties have agreed to, the Defendant is entitled to the right to take his plea back. But if the judge accepts the Agreement and agrees to sentence the Defendant in that range, then the Plea will still exist.

Additionally, as noted in Paragraph 13, if the Defendant's co-Defendants plead guilty on or before February 6, 2025, the Defendant will be entitled to an additional point off the Guidelines or a global point. As Your Honor already

mentioned, the Defendant agrees not to file an appeal if he's sentenced to a term of imprisonment less than 420 months. I think those are the most important parts, Your Honor, unless there are any others that you would like me to highlight.

THE COURT: Ms. Harris, is there anything you would like to add to the record in that regard?

MS. HARRIS: No, Your Honor.

THE COURT: All right. We talked about -- Mr. Blanco, we talked about the elements are the crime, which are the elements the Government must approve to establish guilt at trial. Are you aware of the elements of the crime of which you are charged and which you seek to plead guilty?

A. Yes, Your Honor.

THE COURT: I'm going to ask Ms. Farrell to summarize those elements for the record.

MS. FARRELL: Your Honor, Count 1 of the superceding indictment charges the Defendant with racketeering in violation of Title 18 United States Code Sections 1962(c) and 1963. The Government must prove each of the following elements beyond a reasonable doubt, that an enterprise existed, here, the Transnational Criminal Organization, the Mara Salvatrucha, or the MS-13, and that it was engaged in or the activities of the enterprises had an effect upon interstate or foreign commerce, two, that the Defendant was a knowing member of the enterprise, three, that the Defendant

intentionally performed acts, functions, or duties which were necessary to or helpful in the operation of the enterprise, and four, that the Defendant conducted or participated unlawfully, intentionally, and knowingly in the conduct or affairs of the enterprise through a pattern of racketeering activity, by committing at least two specific acts related to the affairs of the MS-13 enterprise.

Racketeering Act 4(b) is murder. That charges the Defendant with murder in violation of New York Penal Law Sections 125.25(1), which is murder in the second degree, and 20, which is acting in concert. The Government would have to prove each of the following elements beyond a reasonable doubt, that on or about the respective dates set forth in the superceding indictment, within the Eastern District of New York, the Defendant personally or by acting in concert with another person, caused the death of Josue Amaya-Leonor, and two, that the Defendant did so with the intent to cause his death.

And Racketeering Act 10, which is a conspiracy to distribute marijuana, charges the Defendant with a conspiracy to distribute marijuana in violation of Title 21 United States Code Section 841(b)(1)(d) and Section 846. The Government would have to prove the following elements beyond a reasonable doubt in connection with that racketeering act, one, that two or more persons agreed to distribute or possess with intent to

distribute one or more controlled substances, specifically marijuana, a Schedule 1 controlled substance, two, that the Defendant was a party to or a member of that agreement, and three, that the Defendant joined the agreement or conspiracy knowing of its objective, which was to distribute and possess with the intent to distribute marijuana, and knowingly intending to join together with at least one other alleged conspiracy to achieve that objective.

THE COURT:  Thank you.  Ms. Harris, anything to add to that?

MS. HARRIS:  No, Your Honor.

BY THE COURT:

Q.  Mr. Blanco, have you discussed with your attorney the charges in the superceding indictment to which you seek to plead guilty?

A.  Yes, Your Honor.

Q.  Do you understand the nature of those charges?

A.  Yes, Your Honor.

THE COURT:  I'm going to ask the attorney for the Government to summarize the potential penalties to face with a guilty plea.

MS. FARRELL:  Your Honor, the statutory penalties for racketeering are a maximum term of life and a minimum term of imprisonment.  The maximum term is -- of supervised release is five years.  And if a condition of release is violated, the

Defendant may be sentenced up to five years without credit for pre-release imprisonment or time previously served on post-release supervision.

MR. ALMONTE: I'm sorry, or? By the Interpreter, or?

MS. FARRELL: Or time previously served on post-release supervision. The maximum fine is the greater of $250,000 or twice the gross gain or twice the gross loss. Restitution is mandatory in the full amount of the victim's losses as determined by the Court. There's also a $100 special assessment, and there's criminal forfeiture as set forth in the Plea Agreement, and removal is presumptively mandatory based on the Defendant's immigration status.

THE COURT: Okay, thank you.

BY THE COURT:

Q. Mr. Blanco, among the penalties just outlined, there's something called "supervised release." Supervised release is like probation or parole. It's a period during which your conduct will be supervised. You'd have to follow certain rules and restrictions. And if you failed to do so, you could be sent back to prison for a period of up to five years without credit for prior time served, do you understand?

A. Yes, Your Honor.

Q. Okay. Have you discussed the Sentencing Guidelines and related sentencing factors with your attorney?

A. Yes, Your Honor.

Q. Do you understand that the Sentencing Guidelines are not mandatory, but that, in sentencing, the Court is required to consider the applicable guideline range along with the certain factors listed in 18 United States Code Section 3553(a), but the Court will consider the nature and circumstances of the offense and your criminal history (inaudible) other characteristics?

A. Yes, Your Honor.

Q. What that means, really, for the purposes of this Agreement, is that your sentence will be for a period of 420 months or below if the Agreement remains enforced, but there's a statutory maximum of life if, for some reason, this Plea Agreement falls apart, do you understand that?

A. Yes, Your Honor.

Q. Okay. In formulating a sentence, the district court has to consider certain statutory factors I referred to before. These include the seriousness of the offense, just punishment, and protection of the public from additional criminal conduct by you or others, do you understand?

A. Yes, Your Honor.

Q. Do you realize that if the sentence is more severe than you expect, you'll still be bound by your guilty plea, and you will not be permitted to withdraw it, although you may be able to challenge the sentence if you're sentenced to a period of

incarceration greater than 420 months, the duration of your supervised release is greater than the statutory maximum, or there's some other condition of supervised release imposed that you didn't inquire notice of and a chance to object?

A.  Yes, Your Honor.

Q.  Do you have any questions you'd like to ask me about the charges or your rights or anything else related to these proceedings?

A.  No, Your Honor.

Q.  Are you prepared to plead at this time?

A.  Yes, Your Honor.

THE COURT:  Ms. Harris, do you know any legal reason why the Defendant should not plead guilty?

MS. HARRIS:  No, Your Honor.

BY THE COURT:

Q.  Mr. Blanco, are you satisfied with your legal representation up until this point?

A.  Yes, Your Honor.

Q.  Do you believe your lawyer did a good job?

A.  Yes, Your Honor.

Q.  What is your plead to Count 1 of the superceding indictment for racketeering?

A.  Guilty.

Q.  Are you making this plea of "guilty" voluntarily and of your own free will?

A. Yes, Your Honor.

Q. Has anyone threatened you or coerced you in any way in order to get you to plead guilty?

A. No, Your Honor.

Q. Other than your Agreement with the Government, meaning the Plea Agreement that we've just reviewed on the record, has anyone made any promise to you to get you to plead guilty?

A. No, Your Honor.

Q. Has anyone made any promise to you as to what your sentence will be?

A. No, Your Honor.

Q. I'm now going to ask you to describe for me in your own words what you did in connection with the charges to which you're seeking to plead guilty.

MS. HARRIS: Your Honor, with the Court's permission, because we have a multi-step written allocution, if it's acceptable, if I read slowly, it's interpreted, and then the client affirms those statements, would that be acceptable with the Court?

THE COURT: Ms. Farrell?

MS. FARRELL: No objection, Your Honor.

THE COURT: We can do that. He can also allocute in Spanish and have it translated, but whatever is --

MS. HARRIS: I understand, Your Honor. It was a last-minute adjustment as well. So I think it would be

smoother if we proceed in this way.

THE COURT: Okay. Mr. Blanco, we're going to proceed as your attorney suggests. But if you have any questions, even just to direct to your attorney, we'll turn off the microphones, and we'll give you a chance to do that with the translator, okay?

A. Okay.

MS. HARRIS: And, Your Honor, if I just have one tiny second before we begin with my client.

THE COURT: Sure.

MS. HARRIS: Thank you very much.

THE COURT: Thank you.

(Pause in proceedings)

THE COURT: Okay, let's continue.

MS. HARRIS: Okay, thank you, Your Honor. So I'm going to speak in the first person for the avoidance of any confusion on the record on behalf of my client, Jose Moises-Blanco.

I joined the gang MS-13 in approximately 2014. Do you want -- Your Honor, do you want him to --

THE COURT: We'll go through the whole thing.

MS. HARRIS: We'll go through the whole thing, okay.

THE COURT: And then if Mr. Blanco needs a break or needs to stop and ask a question, we'll do that. We'll accommodate whatever he needs in terms of explanation.

MS. HARRIS:  Okay.  I didn't know if you wanted him to affirm each part, okay.

THE COURT:  No, no.  We'll do the whole thing.

MS. HARRIS:  The MS-13 has members in New York, in other states, and in other countries.  MS-13 members are involved in criminal activities such as murders, attempted murders, assaults, and drug dealing.  The gang has rules that members are expected to follow.  While I was a member of the MS-13, I committed crimes with other MS-13 members on behalf of the gang so that I could gain more status or maintain my status in the gang, including the crimes I'm about to describe.

In September 2016, I agreed with other MS-13 members to kill Josue Amaya-Leonor, who was a member of a rival gang.  On September 4th, 2016, I stayed in close proximity to the Roosevelt reserve in Roosevelt looking out for the police because other lower ranking MS-13 members lured the victim to a secluded area in the reserve and killed him.  After I learned that the victim was killed, I went to the site of the murder to see who was there.

From early 2016 through July 2020 --

THE COURT:  Before you get to that, Roosevelt, New York, on Long Island?

MS. HARRIS:  Correct.

THE COURT:  Okay.

MS. HARRIS:  From early 2016 through July 2020, I and other members of the MS-13, sold marijuana.  Some of the money or the profits from the sale of marijuana went back to the gang.  I --

THE COURT:  When you say "back to the gang," do you mean in other states or other countries?

MS. HARRIS:  Your Honor, it went to fund other gang activities, including buying more drugs and fund the activities of the gang.

THE COURT:  Did the drugs come from out of state?

MS. HARRIS:  I believe we would not contest that representation, correct.

THE COURT:  Well, I'd like to know that the interstate commerce connection is to the activity you've just described.

MS. HARRIS:  Yeah.  We'll stipulate that the drugs came from out of state, Your Honor.

THE COURT:  Okay.  Are we also stipulating that some of the funds were sent back to the MS-13 higher-ups located in El Salvador or somewhere else?

MS. HARRIS:  Your Honor --

THE COURT:  Outside New York, just somewhere outside New York?

MS. HARRIS:  Yeah.  We'd stipulate that the money crossed state lines as well.

THE COURT: Okay. I'm sorry. Please continue.

MS. HARRIS: I did these things knowingly and intentionally, and I understood what I was doing at the time was wrong and against the law.

THE COURT: At the time you joined the MS-13, did you know that they were involved in criminal activity (inaudible) already described?

A. Yes, Your Honor.

THE COURT: Okay. Is there anything else, Ms. Farrell?

MS. FARRELL: Your Honor, I would just -- if the Court could inquire that the drug dealing that the Defendant described occurred at least in part in the Eastern District of New York or on Long Island.

THE COURT: Sure.

MR. ALMONTE: I'm sorry. If (inaudible) by the Interpreter?

THE COURT: If the drug dealing occurred on Long Island. I'd start with that.

A. Yes, Your Honor.

THE COURT: Okay.

MS. FARRELL: And also, the Defendant confirms that everything his counsel said is accurate, including in response to Your Honor's questions.

THE COURT: We're going to get to that. Okay.

BY THE COURT:

Q. Mr. Blanco, you had a chance to listen to everything your attorney just explained about your conduct with your translator?

A. Yes, Your Honor.

Q. Is all of it true and accurate?

A. Yes, Your Honor.

Q. Okay.

THE COURT: Anything else, Ms. Farrell?

MS. FARRELL: Your Honor, the only other thing now is that the Defendant is not contesting that the activities of the MS-13 have an affect on interstate and foreign commerce.

THE COURT: I think we've got that (inaudible), do you want to confirm that?

MS. HARRIS: We confirm it, and I'm happy for my client to say so as well if that's necessary. But we agree that the activities of the gang affected interstate commerce and that people, money, and drugs crossed state lines.

THE COURT: Okay. Mr. Blanco, is that true and accurate?

A. Yes, Your Honor.

THE COURT: Okay. Anything else, Ms. Farrell?

MS. FARRELL: No, Your Honor.

THE COURT: All right. Based upon the information given to me, I find that the Defendant is acting voluntarily,

that he fully understands his rights and the consequences of his plea, and that there's a factual basis for the plea. I'm going to fully recommend to Judge Azrack that she accept the plea of guilty (inaudible) superceding indictment for racketeering. There is a sentencing date of July 2nd at 10:00 a.m. before Judge Azrack. Is there anything else from the Government?

MS. FARRELL: Your Honor, I am prepared to give an offer of proof if the Court would like.

THE COURT: Oh, yes. Before we conclude -- thank you. Please outline the proof that the Government would have submitted if this matter had gone to trial.

MS. FARRELL: If this case went to trial, the Government would prove the Defendant's guilty beyond a reasonable doubt with various sources of evidence. That evidence would include witness testimony, first, from cooperating Defendants, who are former members of the MS-13. Those witnesses would admit their own participation in the crimes committed by the gang to which they pleaded guilty. They would detail the existence and the operations of the MS-13 as an international criminal organization.

MR. ALMONTE: I'm sorry, the -- by the existence and?

MS. FARRELL: Operations of the MS-13 as an international criminal organization. They would testify that

the MS-13 gang has leaders and rules. They would establish the Defendants membership and rank of "home boy" in the Hollywood clique of the MS-13.  Their testimony would establish that the racketeering activities of the MS-13 affect interstate and foreign commerce.

THE COURT:  I'm sorry.  Who is "home boy?"

MS. FARRELL:  That the Defendant held the rank of "home boy."

THE COURT:  Oh, right.  I didn't hear that part. Okay, thank you.

MS. FARRELL:  They would testify regarding the Defendant's participation in the racketeering acts, that he agreed with the other MS-13 members to commit these crimes, and they would testify regarding the Defendant's role in each of those racketeering acts, as well as the approximate date and location, which is in the Eastern District of New York.

Law enforcement witnesses would also testify.  They would testify about who responded to and investigated the murder of Josue Amaya-Leonor, and they would testify as to their observations, evidence recovered, some of which would be admitted at trial.  The Government would offer testimony from medical examiners, particularly those involved in the autopsy and forensic analysis of Josue Amaya-Leonor's remains.  They would testify as to the manner and cause of death, and that testimony would be consistent with cooperator testimony of how

the victim was killed.

The Government would offer evidence from cellphones, as well as call detail records, and cell-sight location data for the Defendant and coconspirators.

MR. ALMONTE:  By the Interpreter, of the Defendants?

MS. FARRELL:  And coconspirators.  The Government would offer evidence obtained lawfully from wiretap warrants of gang-related telephone conversations and text messages between MS-13 members, including the Defendant and his coconspirators.  The totality of the evidence would prove the elements of each of the charged offenses and racketeering acts beyond a reasonable doubt as well as establish that the crimes occurred on or around the dates in the superceding indictment and in the Eastern District of New York.

THE COURT:  I can't tell if that's all.  Is that it?

MS. FARRELL:  That's all, Judge.

THE COURT:  Okay.  Ms. Harris, anything else for the record?

MS. HARRIS:  Nothing on that point, Your Honor.

THE COURT:  All right.  I adhere to my prior conclusion that I believe this Defendant is acting voluntarily, that he fully understands his rights, and the consequences of his plea, that there's a factual basis for the plea.  So I'm still recommending to Judge Azrack that she accept the plea of "guilty" to Count 1 of the superceding

indictment for racketeering.  Do you have anything else --

MS. HARRIS:  Your Honor, sorry.  There is one small issue --

THE COURT:  Okay.

MS. HARRIS:  -- that I forgot to note earlier.  There is a forfeiture provision in the Plea Agreement.  And we agree, and my client agrees, not to assert a property interest or otherwise assert any kind of interest in the items listed.  I just wanted to note that nothing in those paragraphs should be construed as an agreement that each of those items, in fact, does belong to him.  But he certainly agrees to every single provision of the Plea Agreement with respect to the forfeiture of those items.

THE COURT:  Okay.  Anything else, Ms. Harris?

MS. HARRIS:  Nothing further, Judge.

THE COURT:  Okay.  Ms. Farrell, anything in response to that?

MS. FARRELL:  No, Your Honor.

THE COURT:  All right.  Thank you, all.  We are concluded.

ALL:  Thank you very much.

(Court adjourned)

**CERTIFICATION**

I, Lewis Parham, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_Lewis Parham_                                    2/8/25

_____          _____
Signature of Transcriber                              Date